## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD MCINTYRE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1641** |
| **HOUSING AUTHORITY OF NEW ORLEANS** | **SECTION: "G"(1)** |

## <u>ORDER</u>

In this litigation, Plaintiff Ronald McIntyre ("McIntyre") asserts various federal and state causes of action arising out of events that he alleges culminated in his termination from Defendant Housing Authority of New Orleans ("HANO"). Presently pending before the Court is "Defendant's Motion to Dismiss Time-Barred Claims and Motion for Summary Judgment Regarding Whistleblower Claims."[1] Having reviewed the motion, the memorandum in support, the memorandum in opposition, the complaint, the amended complaints, and the applicable law, the Court will grant-in-part and deny-in-part the pending motion.

## I. Background

### A.    *Factual Background*

In his complaint, McIntyre alleges that while employed by HANO from August 2010 to February 2014, he was "subjected to constant and repeated harassment, threats of termination, sexual harassment, sexual discrimination, racial discrimination and retaliation for complaining and reporting" certain alleged acts of misconduct committed by HANO and David Gilmore, HANO's Administrative Receiver.[2] McIntyre contends that in July and August 2010, he identified suspected

---

[1] Rec. Doc. 134.

[2] Rec. Doc. 1 at p. 2. The allegations in McIntyre's complaint are not organized chronologically, although McIntyre provides dates corresponding with many of his allegations. In the summary that follows, the Court has used those dates, where provided, to organize McIntyre's allegations chronologically.

fraud in invoices submitted by a vendor, and reported his suspicions to Gilmore.[3] According to McIntyre, Gilmore responded by stating, in part, that he needed "to spend more time looking at the black crooks."[4] McIntyre further contends that Gilmore stated in August 2010 that McIntyre's inquiry into these invoices "is the reason why I've got to find a white face to run the finance department."[5] That same month, McIntyre maintains, Gilmore stated that he found his "white face," apparently in reference to a newly hired finance director.[6]

McIntyre also avers that, starting in July 2010, Gilmore "regularly inquired" with him about his dating habits, including about the race and gender of the individuals he may have been dating.[7] In November 2010, McIntyre avers, Gilmore stated: "why are you dating white women, stick what you know [sic]," "as of today, you're done with white women," and "do you date men as well."[8] Further, according to McIntyre, HANO's Human Resources Director, Marilyn Allen ("Allen"), "regularly asked [him] to go on [a] date, visit her at her home, requested to visit [him] at [his] home and inquired with him and HANO staff about his personal dating habits up to and including the race of the persons he may be dating," starting in July 2010.[9]

In February 2011, McIntyre avers, Gilmore stated to him: "go chase down you're [sic] brothers, they're the ones stealing."[10]

---

[3] *Id.* at p. 3.

[4] *Id.*

[5] *Id.* at p. 4.

[6] *Id.*

[7] *Id.* at p. 2.

[8] *Id.* at p. 3.

[9] *Id.* at p. 4.

[10] *Id.*

In September 2011, McIntyre alleges, Allen informed him that Gilmore had ordered her to investigate him.[11] McIntyre contends that Allen represented to him at that time that "a long outing" could "make all of this go away."[12] McIntyre alleges that he  believed this statement to be made in jest, and "declined," after which time Allen began her investigation.[13]  According to McIntyre, Allen subjected the finance staff to "threats, coercion, and slander" during the investigation, which were intended to induce them to "make false statements" about him.[14] McIntyre contends that Allen told the finance staff that McIntyre "had sexual relations with many of them and had fathered many children while at HANO," and stated to HANO staffers that they "should be ashamed of dealing with and having children with white men and women."[15]

In March 2012, McIntyre asserts, Gilmore forced him to terminate his assistant because "she looks ghetto, like she's on the corner," remarking that "it will be best if you to  [sic] fire her to make it black on black."[16]

McIntyre further contends, without providing a corresponding date, that Gilmore "attempted to coerce and use Mr. McIntyre to steer contracts to certain vendors of his choosing by placing [him] on bid selection panels as the lone male with the instructions to use his male influence on the women on the panel in an effort to sway the bid scoring."[17] According to McIntyre, Gilmore engaged in

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at p. 5.

[17] *Id.*

3

improper procurement and contracting activities, and told him to "shut up" when he complained about Gilmore's movement of federal funds to pay certain vendors.[18]

In August 2012, as Hurricane Isaac approached New Orleans, McIntyre alleges that Gilmore left New Orleans with HANO's General Counsel, who was white, but forced McIntyre and several senior staff members to stay.[19] In November 2012, McIntyre avers, that Gilmore informed him that "a harassment claim had been made against him and that the charges were deemed false," and informed him that he would not be provided with further information about the claim.[20]

In March 2013, McIntyre asserts, Gilmore instructed him to end a relationship with a City of New Orleans employee.[21] In June 2013, McIntyre alleges, Gilmore told him that he planned to have McIntyre testify in HANO-related legal matters, because "it's good to have a black face out in front of these cases because it serves well in the New Orleans climate."[22] According to McIntyre, Gilmore told him to make a false statement in court regarding HANO's funding, and to "use that same afro, black charm in the court room that you use on the women you date."[23] At this time, McIntyre avers, Gilmore also asked him whether or not he "like[s] men."[24]

In June 2013, McIntyre alleges, he reported the "attitude, comments, and bad behavior" of Jennifer Theodore ("Theodore"), a finance department employee, in response to which he was told

---

[18] *Id.* at p. 6.

[19] *Id.* at p. 8.

[20] *Id.* at pp. 4–5.

[21] *Id.* at p. 3.

[22] *Id.* at p. 6.

[23] *Id.*

[24] *Id.*

"not to address personnel issues or problems directly with the staff no matter how bad the issue."[25] McIntyre contends that, starting in June 2013, and continuing through December 2014, both he and another individual "regularly complained" to the executive management team, including Gilmore, regarding Theodore's "sexual harassment, erratic behavior, inappropriate comments, inappropriate actions, and poor work performance."[26] McIntyre contends that from June 2013 to December 2013, Theodore made a series of inappropriate sexual remarks to him.[27]

In July 2013, McIntyre avers, Gilmore threw a balled-up piece of paper in his face and stated: "I can't do things like that to white folk."[28] In August 2013, McIntyre contends that Gilmore threatened to terminate him unless he apologized to HANO's Director of Real Estate for moving into the office of a member of Gilmore's staff. The individual in question, according to McIntyre, was white.[29]

In September 2013, McIntyre asserts, Gilmore told him to "act like a real black man and deal with those [expletive] girls."[30] During August and September 2013, McIntyre asserts that Gilmore: (1) pressured him to falsify revenue projections, (2) "attempted to force" McIntyre to agree to make payments without proper documentation; (3) instructed him to "use the charm [he] usually use[s] on black girls" to secure approval for a contract; and (4) threatened to send his "black [expletive]

---

[25] *Id.*; Rec. Doc. 26 at p. 1.

[26] Rec. Doc. 1 at p. 6; Rec. Doc. 26 at p. 1.

[27] *Id.* at p. 7.

[28] *Id.* at p. 3.

[29] *Id.* at p. 8; Rec. Doc. 26 at p. 2.

[30] Rec. Doc. 1 at p. 6.

packing out the door."[31]

In December 2013, McIntyre alleges, he requested the suspension, transfer, or termination of Theodore.[32] McIntyre contends that "no action was ever taken" on the matter, notwithstanding "verbal complaints and discussions that had taken place for almost two years."[33] That same month, McIntyre alleges, Gilmore informed him that he had been accused of sexually harassing a female employee, whereupon a team of all white staff members was selected to investigate the allegations.[34] During that month, McIntyre contends, he was informed that Gilmore intended to replace him with a white female.[35]

In January 2014, McIntyre asserts that Gilmore told him that the report from the investigation was "going away," thus eliminating any need for an independent review of the investigation.[36] McIntyre contends that on January 14, 2014, he notified HANO and Gilmore that he intended to file a grievance, and included with this notification a copy of the information he would file with the Equal Employment Opportunity Commission ("EEOC") and the Housing and Urban Development Inspector General's office.[37] McIntyre contends that he then received, on January 16, 2014, a "retaliatory letter stating that his employment with HANO was terminated effective January 16,

---

[31] *Id.* at p. 8.

[32] *Id.* at p. 7.

[33] *Id.*

[34] *Id.* at p. 9.

[35] *Id.*

[36] *Id.*

[37] *Id.*

2014 and that he should contact HANO immediately to perform an exit interview."[38] McIntyre alleges that he completed a telephonic exit interview with an employee in the Human Resources Department on January 20, 2014, and was told that he would receive his last paycheck on January 31, 2014.[39]

On January 27, 2014, McIntyre asserts that the employee who conducted his telephonic exit interview contacted him and informed him that he "would not receive the final paycheck until he comes to HANO to do another exit interview," as ordered by Gilmore.[40] That same day, McIntyre contends, he contacted Gilmore by telephone, whereupon Gilmore informed him that he "would have to return to New Orleans" for an in-person exit interview, and "apologize" before Gilmore would "consider whether or not" he would issue McIntyre's last paycheck.[41] McIntyre maintains that on January 28, 2014, he received "a retaliatory supplemental termination letter" which criticized his performance at HANO, notwithstanding the praise he received for improving the finance department's performance while working at HANO.[42]

McIntyre contends that he did not receive his final paycheck on January 31, 2014, in violation of Louisiana state law.[43] McIntyre alleges that he went to HANO to perform an exit interview with Gilmore, at which time he "apologized to Mr. Gilmore as requested to obtain his final

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at p. 10.

paycheck."[44] Although McIntyre received the paycheck, McIntyre contends that Gilmore informed him that he would not allow him to obtain COBRA health insurance through HANO.[45]

## B.     Procedural Background

McIntyre filed a complaint in this matter on July 16, 2014, alleging causes of action under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C.A. § 1983, the Louisiana Employment Discrimination Law, and Article 2315 of the Louisiana Civil Code.[46] On September 9, 2014, HANO filed "Defendant's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss."[47]

On October 26, 2014, McIntyre filed a "Corrected First Supplemental and Amended Complaint Before Responsive Pleadings Have Been Filed" ("First Amended Complaint").[48] In that pleading, McIntyre alleged that: (1) this Court has jurisdiction over his claims pursuant to Title VII, the Fifth and Fourteenth Amendments to the United States Constitution, Section 1983, the Age Discrimination in Employment Act ("ADEA"), and Louisiana state law;[49] (2) he exhausted his administrative remedies;[50] (3) HANO acted "through and consistent with its policies and practices that have existed before . . . during . . . and continuing after" his employment;[51] (4) he was replaced by a younger white female who is less qualified than he is, for no legitimate, nondiscriminatory

---

[44] *Id.*

[45] *Id.*

[46] *Id.* at pp. 10–11.

[47] Rec. Doc. 10.

[48] Rec. Doc. 17.

[49] Rec. Doc. 17 at pp. 1–3.

[50] *Id.* at p. 3.

[51] *Id.*

reason; and (5) HANO's activities "are and were continuing torts and illegal activities."[52] McIntyre also named David Gilmore as a defendant.[53]

On November 7, 2014, with leave of Court, McIntyre filed a "Second Amended Complaint,"[54] in which he changed the date on certain allegations to read "2013" rather than "2012." The foregoing summary of McIntyre's allegations reflects the changes made by this amended pleading. HANO filed answers to McIntyre's pleadings and amended pleadings on March 20, 2015.[55]

On June 19, 2015, Gilmore filed a motion to dismiss McIntyre's claims against him with prejudice, on the grounds that Gilmore had not been served.[56] On July 14, 2015, the Court granted Gilmore's motion in part, and dismissed McIntyre's claims against him without prejudice.[57]

On July 21, 2015, HANO filed a "Motion for Summary Judgment" as to all claims.[58] On August 19, 2015, the Court heard oral argument on both the motion to dismiss that was originally filed on September 9, 2014, as well as the motion for summary judgment. On that date, the Court granted HANO's motion for summary judgment as to the claims of intentional infliction of emotional distress and age discrimination and denied the motion as to the Title VII and Section 1983

---

[52] *Id.* at p. 4.

[53] *Id.* at p. 3.

[54] Rec. Doc. 26.

[55] Rec. Doc. 44; Rec. Doc. 45; Rec. Doc. 46.

[56] Rec. Doc. 66.

[57] Rec. Doc. 95.

[58] Rec. Doc. 100.

claims of sex discrimination, race discrimination, harassment, and retaliation.[59] The Court denied, without prejudice, the motion for summary judgment and motion to dismiss as to the remaining claims, but allowed HANO to reurge its motion for summary judgment regarding McIntyre's whistleblower claims and its motion for summary judgment and motion to dismiss regarding the issue of whether the claims are time-barred.[60] On August 21, 2015, HANO filed the instant motion.[61] McIntyre filed his memorandum in opposition on August 26, 2015.[62] On September 2, 2015, with leave of Court, HANO filed a reply brief.[63]

## II. Parties' Arguments

### A.    *HANO's Arguments in Support of its Motion to Dismiss and for Summary Judgment*

HANO first moves to dismiss or, in the alternative, for summary judgment regarding the portions of McIntyre's complaint it claims are based on events that occurred more than one year prior to the filing of the original complaint on July 16, 2014 on the ground that they are time-barred.[64] According to HANO, these claims include McIntyre's Section 1983 claims and state law claims.[65] Second, HANO additionally argues for dismissal or, in the alternative, summary judgment regarding McIntyre's Title VII claims that are based upon "separate and discrete acts occurring

---

[59] Rec. Doc. 131.

[60] *Id.*

[61] Rec. Doc. 134.

[62] Rec. Doc. 136.

[63] Rec. Doc. 144.

[64] Rec. Doc. 134-1 at p. 1.

[65] Rec. Doc. 134 at p. 1.

outside of the specific time period identified in McIntyre's EEOC charge."[66] Third, HANO moves

for summary judgment on McIntyre's Louisiana whistleblower claim, arguing that McIntyre has

failed to sufficiently allege or show that HANO violated state law, or that McIntyre was discharged

for "reporting and refusing to participate in or threatening to disclose an alleged violation of state

law by HANO."[67] Fourth, HANO moves for summary judgment "on the portions of McIntyre's

Section 1983 claims that are based on undated allegations," arguing that the "adjacent dated

allegations reveal[] that those claims are time-barred and should be dismissed."[68] Finally, HANO

argues that it is entitled to summary judgment on any federal whistleblower claim.[69]

As to its first argument, HANO contends that the specificity of the complaint "demonstrates

that McIntyre was aware at the time of each alleged violation of his rights, thus triggering his duty

to assert his claims."[70] HANO argues that because McIntyre's Section 1983 claims are subject to a

one-year prescriptive period under Louisiana law, all Section 1983 claims arising before July 16,

2013 must be dismissed as time-barred.[71] HANO states that these claims are those that could be

based on factual allegations contained in paragraphs 16-20, 22-40, 54, 57, 60-61, and 78-80 of

McIntyre's complaint, as well as in paragraphs 15, 21, and 58 to the extent they contain allegations

up until July 16, 2013.[72] HANO contends, for the same reasons, that McIntyre's state law claims

---

[66] *Id.*

[67] *Id.* at pp. 1-2.

[68] *Id.* at p. 2.

[69] Rec. Doc. 134-1 at p. 13.

[70] *Id.* at p. 3.

[71] *Id.*

[72] *Id.*

under "Louisiana employment laws, torts laws, and whistleblower law" based on factual allegations contained in those paragraphs are also "time-barred and must be dismissed with prejudice."[73] HANO argues that the continuing violation doctrine does not apply here because, as demonstrated by the specificity of his allegations, McIntyre "plainly alleges separate and discrete acts."[74]

HANO also seeks summary judgment on McIntyre's Section 1983 claims  based on the undated allegations in paragraphs 33-35, 39-40, and 55-56 of McIntyre's complaint.[75] HANO contends that reading these allegations in context with the dated adjacent allegations demonstrates that they relate to events in the same time period and thus are time-barred as well.[76]

Additionally, HANO argues that McIntyre's Title VII claims that were not encompassed within the EEOC charge are also time-barred.[77] HANO contends that, according to the complaint, the events giving rise to the claims occurred over a three-and-one-half year period, beginning in August of 2010 and ending in February of 2014.[78] However, HANO contends that the charge that McIntyre filed with the EEOC is expressly limited to acts that allegedly occurred between October 2013 and January 16, 2014.[79]  HANO argues that any claims not included within the EEOC charge should be dismissed for failure to exhaust administrative remedies.[80] HANO argues that "[t]he law

---

[73] *Id.* at p. 5.

[74] *Id.* at p. 4.

[75] *Id.* Later in its memorandum in support, HANO includes paragraph 77 of the complaint. *Id.* at p. 14.

[76] *Id.* at p. 5.

[77] *Id.*

[78] *Id.*

[79] *Id.* at p. 6.

[80] *Id.*

12

is clear that failure to file a charge with the EEOC within the 300-day limitations period and before filing suit requires dismissal of the claims."[81] HANO contends that this dismissal must be with prejudice because "it is clear that any Title VII claims McIntyre *might* have asserted based on events occurring prior to October 2013 are far outside the 300-day limitations period."[82] HANO asserts that these claims are those allegedly supported by factual allegations contained in paragraphs 16-40, 54, 57, 60-67, 78-80 of the complaint and in paragraphs 15 and 58 up until October of 2013.[83]

Next, HANO moves for summary judgment on McIntyre's claim under Louisiana's whistleblower law.[84] HANO argues that McIntyre has not satisfied any of the four required elements: "(1) his employer, HANO violated Louisiana state law through a prohibited workplace act or practice; (2) he advised HANO regarding its violation; (3) he refused to participate or threatened to disclose the practice; and (4) he was fired, constructively discharged, or otherwise discriminated against as a result of his threat to disclose or refusal to participate."[85] HANO contends that McIntyre does not allege any acts or conduct committed by HANO that constitute a violation of state law, only allegations of improper actions taken by third parties.[86] According to HANO, McIntyre also admits that the contracts referenced in his complaint in connection with alleged violations of state bid law

---

[81] *Id.* (citing *Spears v. Jefferson Parish Sch. Bd.*, 2014 U.S. Dist. LEXIS 82326, at *18–19 (E.D. La. June 17, 2014) (collecting cases)).

[82] *Id.*

[83] *Id.*

[84] *Id.* at p. 7.

[85] *Id.* at p. 8 (citing *Hale v. Touro Infirmary*, 2004-0003, pp. 9–10 (La. App. 4 Cir. 11/3/04); 886 So. 2d 1210, 1216).

[86] *Id.* at p. 8–9.

are contracts for professional services, which are not subject to Louisiana bid law.[87] Furthermore, HANO contends that McIntyre fails to identify any specific contracts that were allegedly "steered" when they should have been awarded through a public bid.[88] Finally, HANO avers that McIntyre's alleged violations of federal law in complaint paragraphs 48-51, 84, and 87-88 cannot support a claim under Louisiana's whistleblower statue because an actual violation of state law is a prerequisite to such a claim.[89] As a result, HANO moves the Court to grant its motion for summary judgment on the alleged whistleblowing activities set out in paragraphs 10, 13, 41-47, 52, and 82-86 of McIntyre's complaint.[90] HANO contends that, even if McIntyre had properly alleged a violation of state law by HANO, McIntyre "has not produced any evidence that his alleged complaints about purported misconduct and/or his alleged refusal to participate in activities he deemed improper was the *cause* of his termination."[91]

Finally, HANO contends that McIntyre has not alleged a federal whistleblower claim despite his opportunity to do so in three separate amendments, and an addition of such a claim "should not be permitted now, on the eve of trial."[92]

## B.    *McIntyre's Opposition*

In opposition, McIntyre argues that "[t]he acts of discrimination (refusal to investigate

---

[87] *Id.* at p. 9 (citing LA. REV. STAT. 38.2212; *Worldwide Parking, Inc. v. New Orleans City*, 123 F. App'x 606, 608 (5th Cir. 2005)).

[88] *Id.* at p. 10.

[89] *Id.* at p. 12.

[90] *Id.* Later in its memorandum in support, HANO contends that McIntyre's whistleblower claims are contained in paragraphs 9-14, 22-23, 27-29, 41-53, 81-88 of the complaint as well as Rec. Doc. 16 paragraph 100A. *Id.* at p. 14.

[91] *Id.*

[92] *Id.* at p. 13.

complaints of McIntyre, investigation of Theodore's complaint, termination of McIntyre) present [] continuing and connected acts of discrimination and then retaliatory termination."[93] McIntyre argues that the last act of discrimination was the termination of McIntyre and therefore the operative date for prescription of the Title VII and Section 1983 claims is January 14, 2014.[94] In response to HANO's claim that McIntyre's Section 1983 claims are time-barred, McIntyre contends that "the incidents cited in his petition compris[e] continuous activity and illegal acts and omissions leading up to the termination that was in retaliation for EEO activity and whistleblowing."[95] In response to HANO's claim that McIntyre's state law claims are time-barred, McIntyre alleges that the state law claims are subject to the continuous tort doctrine.[96]

McIntyre next contends that "[g]iven the broad scope of the EEO administrative complaint especially when, as in the instant matter, the administrative complaint was filed in proper person, McIntyre's allegations in his federal complaint are within the scope of the charge."[97] In support, McIntyre quotes the Fifth Circuit in *Pacheco v. Mineta*,[98] stating that the Court must engage in a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label."[99] In response to HANO's claim that McIntyre's Title VII claims, to the extent not encompassed within the EEOC charge,

---

[93] Rec. Doc. 136 at p. 8.

[94] *Id.*

[95] *Id.* at p. 9.

[96] *Id.* at p. 10.

[97] *Id.* at p. 9.

[98] 448 F.3d 783, 788–89 (5th Cir. 2006).

[99] *Id.*

should be dismissed as time-barred, McIntyre responds, "[a]s shown above, McIntyre's 1983 claims and Title VII claims result from the termination on January 14, 2014, with the incidents cited in his petition comprising continuous activity and illegal acts and omissions leading up to the termination that was in retaliation for EEO activity and whistleblowing."[100]

Addressing HANO's motion for summary judgment as to the Louisiana whistleblower claims, McIntyre argues that "McIntyre made complaints about Gilmore's illegal activities in violation of Louisiana State Bid Law (La. R. S. 39:1594; La. R. S. 32:2212) and the Federal False Claims Act (31 U.S.C. 3729, which allows a private action for false claims to the government)."[101] McIntyre contends that although he did not cite the original statutes in his pleading, the facts constitute adequate pleading and therefore he detailed a termination for whistleblowing activity under state and federal law.[102] McIntyre additionally asserts that "HANO's obstruction to discovery is an issue in this case," however, McIntyre does not explain why those allegations are relevant to his argument in opposition to the motion for summary judgment.[103]

Finally, in response to HANO's motion for summary judgment on the Section 1983 claims based on undated allegations, McIntyre repeats his assertion that the incidents listed in the petition comprise continuous activity.[104]

## C.   *HANO's Reply*

HANO asserts that McIntyre has failed to provide any meaningful argument in response to

---

[100] Rec. Doc. 136 at p. 10.

[101] *Id.*

[102] *Id.*

[103] *Id.* at p. 11.

[104] *Id.*

its assertion that many of his claims are time-barred.[105] According to HANO, McIntyre's sole argument in response is that the incidents comprise continuous activity.[106] HANO contends that the single case cited by McIntyre affirmed dismissal of time-barred claims that were not based on conduct "perpetuated through overt, persistent, and ongoing acts."[107] Because McIntyre failed to explain why the discrete acts alleged comprise persistent, ongoing activity, HANO asserts that these claims should be dismissed pursuant to Rule 12(b)(6).[108]

HANO asserts, in the alternative, that the undated allegations should be dismissed on summary judgment.[109] HANO contends that while paragraphs 33-35, 39-40 and 55-56 of McIntyre's complaint contain undated allegations, reading those allegations in context with related, dated paragraphs shows that those claims are also time-barred.[110] HANO argues that McIntyre admitted in his response that these allegations occurred prior to July 16, 2013.[111] Because Plaintiff has failed to come forward with any evidence to show that the events occurred before July 16, 2013, were part of an "overt persistent, and ongoing" practice, HANO asserts that Plaintiff's Section 1983 and state law claims based on those events must be dismissed on summary judgment.[112]

HANO also asserts that the Title VII claims not encompassed within McIntyre's EEOC

---

[105] Rec. Doc. 144 at p. 1.

[106] *Id.* at pp. 1, 3.

[107] *Id.* at p. 3 (quoting *Young v. United States*, 727 F.3d 444, 449 (5th Cir. 2013).

[108] *Id.*

[109] *Id.* at p. 4.

[110] *Id.*

[111] *Id.*

[112] *Id.* at p. 5.

charge must be dismissed for failure to exhaust administrative remedies.[113] It argues that McIntyre's EEOC charge was limited to actions occurring between October 2013 and January 16, 2014.[114] Accordingly, HANO contends that these claims must be dismissed for failure to exhaust administrative remedies and because it is too late to file an additional charge with the EEOC based on any acts occurring prior to October 2013.[115]

HANO asserts that McIntyre's Louisiana whistleblower claims must be dismissed on summary judgment because he failed to allege and cannot show an actual violation of state law.[116] HANO notes that McIntyre did not attach any documents suggesting a violation of state law, instead pointing only to a discovery dispute.[117] According to HANO, McIntyre's response appears to suggest that there are documents that were not produced by HANO in discovery, but HANO contends that it fully complied with the Magistrate Judge's discovery order.[118]

Finally, according to HANO, McIntyre's response, for the first time, argues that his complaint provided proper notice of a whistleblower claim under the False Claims Act.[119] HANO asserts that the complaint failed to allege that HANO presented a false or fraudulent claim to the federal government for payment.[120] Further, HANO argues that McIntyre failed to satisfy the

---

[113] *Id.* at pp. 5–6.

[114] *Id.*

[115] *Id.* at p. 6.

[116] *Id.*

[117] *Id.* at p. 7.

[118] *Id.*

[119] *Id.*

[120] *Id.* at pp. 7-8.

procedural prerequisites to bring a *qui tam* action.[121]

### III. Law and Analysis

**A.     Whether McIntyre's Section 1983, State Law, and Title VII Claims Are Prescribed**

HANO first moves to dismiss McIntyre's claims under Section 1983, Louisiana state law claims, as well as plaintiff's Title VII claims that are not encompassed within his EEOC charge, as time-barred.[122] In opposition, McIntyre asserts that "[t]he facts show a continuation of inappropriate behavior culminating with McIntyre's *discriminatory* **and** *retaliatory* termination January 14, 2014, allegedly for the same behavior that took place continuously, according to policy, since 2010."[123]

#### 1.     Legal Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[124] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[125] "Factual allegations must be enough to raise a right to relief above the speculative level."[126] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[127]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and

---

[121] *Id.* at p. 8.

[122] Rec. Doc. 134-1 at p. 1.

[123] Rec. Doc. 136 at p. 8.

[124] FED. R. CIV. P. 12(b)(6).

[125] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[126] *Twombly*, 550 U.S. at 556.

[127] *Id.* at 570.

all facts pleaded are taken as true.[128] However, although required to accept all "well-pleaded facts"as

true, a court is not required to accept legal conclusions as true.[129] "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations."[130] Similarly,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"

will not suffice.[131]  The complaint need not contain detailed factual allegations, but it must offer

more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of

action.[132]  That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-

harmed-me accusation."[133] From the face of the complaint, there must be enough factual matter to

raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted

claims.[134] If factual allegations are insufficient to raise a right to relief above the speculative level,

or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim

must be dismissed.[135]

It is well-established that, in deciding whether to grant a motion to dismiss pursuant to Rule

---

[128] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[129] *Iqbal*, 556 U.S. at 677–78.

[130] *Id.* at 679.

[131] *Id.* at 678.

[132] *Id.*

[133] *Id.*

[134] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[135] *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

12(b)(6), a district court may not "go outside the complaint."[136] There is one recognized exception to that rule: a district court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the claim.[137] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[138] If, however, a district court considers other information outside the complaint, it must treat the motion to dismiss as a motion for summary judgment.[139]

### 2.    Motion to Dismiss Section 1983 Claims

HANO's first argument is that all of HANO's Section 1983 claims that are based on events that occurred before July 16, 2013, must be dismissed because the claims were not timely asserted.[140] Specifically, HANO argues that claims based on allegations in paragraphs 15-40, 54, 57-58, 60-61, 78-80 occurring before July 16, 2013 should all be dismissed as time-barred.[141] In opposition, McIntyre contends that the operative date for prescription of his 1983 claims is January 14, 2014, the date that he was terminated.[142] McIntyre asserts that "[t]he facts show a continuation of inappropriate behavior culminating with McIntyre's *discriminatory* **and** *retaliatory* termination January 14, 2014, allegedly for the same behavior that took place continuously, according to policy,

---

[136] *Rodriguez v. Rutter*, 310 F. Appx. 623, 626 (5th Cir. 2009); *Carter v. Target Corp.*, 541 F. App'x. 413, 416–17 (5th Cir. 2013).

[137] *Id.; see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[138] *Carter*, 541 F. App'x at 416.

[139] Fed. R. Civ. P. 12(d); *Rodriguez*, 310 F. App'x at 626.

[140] Rec. Doc. 134-1 at p. 3.

[141] *Id.* at p. 14.

[142] *Id.* at p. 8.

since 2010."[143]

Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury which is the basis of the action."[144] Federal law determines when Section 1983 claims accrue, but state law determines the prescriptive period.[145] McIntyre's Section 1983 claims are therefore subject to Louisiana's one-year prescriptive period.[146]

The continuing violations doctrine, an equitable exception to the one-year period, may apply "[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts."[147] The continuing violations doctrine "relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more which falls within the limitations period."[148] "The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights."[149] The Fifth Circuit has instructed that:

> [a]lthough there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete

---

[143] *Id.*

[144] *Lavallee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980) (quoting *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)).

[145] *Burge v. Parish of St. Tammany*, 996 F.2d 786, 787 n.1 (5th Cir. 1993).

[146] *Id.* (citing LA. CIV. CODE ANN. art. 3492).

[147] *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989) (quoting *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 532 (5th Cir.1986)).

[148] *Messner v. Meno*, 130 F.3d 130, 134–35 (5th Cir. 1997).

[149] *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir. 1985) (citations and internal quotations omitted).

occurrence, that gives rise to the cause of action.[150]

In *Berry v. Board of Supervisors of L.S.U.*, the Fifth Circuit first recognized the continuing violations doctrine.[151] There, the court identified three factors relevant to a determination of whether alleged discriminatory acts are related closely enough to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination; (2) the frequency of the alleged discrimination; and (3) whether the alleged conduct has the degree of permanence which should trigger an employee's awareness of and duty to assert his rights.[152]

The Supreme Court appears to have foreclosed the application of this doctrine, however, in cases where the allegations are "discrete discriminatory acts." In *National Railroad Passenger Corporation v. Morgan*,[153] the Supreme Court found that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."[154] The Court explained, "[d]iscrete acts such as termination, failure to promote, denial of transfer or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"[155] In that case, the plaintiff had alleged that prior to his firing, he had been wrongfully suspended, denied training, charged with insubordination, and falsely accused of threatening a manager.[156] The Court ruled that

---

[150] *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (internal citations omitted).

[151] 715 F.2d 971 (5th Cir. 1983).

[152] *Id.* at 981.

[153] 536 U.S. 101 (2002).

[154] *Id.* at 113.

[155] *Id.* at 114.

[156] *Id.*

claims based on those actions were no longer actionable as they had not been timely filed.[157]

The Supreme Court in *National Railroad Passenger Corporation*, however, distinguished hostile work environment claims from those that are discrete acts, stating that hostile work environment claims are "different in kind" because "their very nature involves repeated conduct."[158] The Court held that a hostile environment claim constitutes a single unlawful employment practice, therefore it did not matter that some of the component acts fell outside the statutory period.[159]

McIntyre asserts claims of retaliation, discrimination and harassment. However, in his opposition to HANO's motion to dismiss, McIntyre only makes a general statement that "the incidents cited in his petition compris[e] continuous activity and illegal acts and omissions leading up to the termination that was in retaliation for EEO activity and whistle blowing."[160] He does not make separate arguments as to how the continuing violation doctrine applies to each of his claims. Nonetheless, finding that the type of claim affects the application of the continuing violation doctrine, the Court will address separately the application of the continuing violation doctrine for each of McIntyre's claims.

### a. Retaliation Claims

With regard to his retaliation claim, McIntyre argues that he brought to Gilmore's attention the allegedly illegal acts he saw going on at HANO and, as a result, suffered retaliation in the following ways:

the dismissal of some of his staff, harassment of him and his staff, false claims of

---

[157] *Id.* at 115.

[158] *Id.*

[159] *Id.* at 117.

[160] Rec. Doc. 136 at pp. 9–11.

24

sexual harassment against him, HANO's refusal to investigate McIntyre's own sexual harassment claims, HANO's attempt to force employees to testify falsely against McIntyre, and eventually fired him allegedly for the Theodore sexual harassment complaint when the evidence shows that there was no sexual harassment by McIntyre, but a long history of sexual harassment and inappropriate behavior by Theodore, which was complained of by several employees.[161]

The Fifth Circuit, however, has held that the continuing violations doctrine does not apply to claims of retaliation because "retaliation is, by definition, a discrete act, not a pattern of behavior."[162] Therefore, the Court finds that any retaliation claims to the extent they contain allegations occurring before July 16, 2013, must be dismissed as time-barred.

> **b.    *Sex and Race Discrimination Claims***

McIntyre also asserts a Section 1983 claim for "discriminatory termination for the sake of hiring a white female."[163] McIntyre contends that Gilmore's refusal to investigate McIntyre's complaints and the investigation of Theodore's complaint constitute "continuing and connected acts of discrimination."[164] McIntyre has made no argument, however, regarding the frequency of these alleged acts or how they are connected. In *National Railroad Passenger Association*, the plaintiff alleged discriminatory acts which included a false accusation of threatening a manager and a denial of training.[165] Here, McIntyre alleges that both the investigation of Theodore's complaint and the failure to investigate McIntyre's own claims of sexual harassment were acts of discrimination. These actions, like in *National Railroad Passenger Association*, constitute separate, discrete acts. Therefore, the Court finds that McIntyre's race and sex discrimination claims, to the extent they

---

[161] *Id.* at p. 2.

[162] *Hamic v. Harris Cnty.*, W.C. & I.D. NO. 36, 184 F. App'x 442, 447 (5th Cir. 2006).

[163] Rec. Doc. 136 at p. 3.

[164] *Id.* at p. 8.

[165] 536 U.S. at 115.

contain allegations occurring before July 16, 2013, must be dismissed as time-barred.

        **c.**      ***Harassment Claims***

McIntyre alleges that the "acts of harassment complained of are part of a policy and practice established under Gilmore at HANO" and that "[t]he facts show a continuation of inappropriate behavior culminating with McIntyre's discriminatory and retaliatory termination January 14, 2014, allegedly for the same behavior that took place continuously, according to policy, since 2010."[166] "Hostile environment claims are different in kind from discrete acts," because "their very nature involves repeated conduct."[167]

In *Stewart v. Mississippi Transportation Commission*,[168] the Fifth Circuit addressed whether the continuing violation doctrine applied to a plaintiff's Title VII hostile work environment claim. In that case, the plaintiff asserted that: (1) her supervisor harassed her beginning with when she started work in 2003; (2) her supervisor began attempting to physically touch her in 2004; (3) she reported her supervisor twice in 2004, leading to her reassignment; (4) she was again placed under the supervision of this individual in 2006, at which time he stated to her that he wanted to "be sweet and they were going to have an understanding."[169] The Fifth Circuit concluded that the events were "sufficiently related . . . to constitute a single 'practice'" for purposes of Title VII,[170] but nonetheless held that in light of the "intervening acts" of the plaintiff's employer—specifically, the employer's reprimand of the supervisor and reassignment of the plaintiff in 2004—the plaintiff could not rely

---

[166] Rec. Doc. 136 at p. 8.

[167] *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115.

[168] 586 F.3d 321 (5th Cir. 2009).

[169] *Id.* at 325–26.

[170] *Id.* at 329.

on the continuing violation doctrine to assert claims arising out of the conduct that occurred in 2004.[171]

In contrast, in *Huckabay v. Moore*,[172] the Fifth Circuit addressed the continuing violation doctrine in the context of a Title VII hostile work environment claim, using the three factors identified in *Berry v. Board of Supervisors of L.S.U.* These factors are: (1) whether the alleged acts involve the same type of discrimination; (2) the frequency of the alleged discrimination; and (3) whether the alleged conduct has the degree of permanence which should trigger an employee's awareness of and duty to assert his rights.[173] In *Huckabay*, the court concluded that there was "little question" that the continuing violation doctrine applied where the plaintiff alleged "ongoing racial harassment . . . [that was] all of the same sort . . . [was] continual . . . [and] was a permanent condition of [the plaintiff's] workplace."[174] Further, the court reasoned, "the pattern of harassment was not the kind of violation that—like a discrete instance of discriminatory conduct—would put a worker on notice that his rights had been violated."[175] Although the court expressly did not address whether "every hostile environment would necessarily be a continuing violation," it concluded that the plaintiff's allegations of "constant remarks," including remarks made during the 300-day filing period, constituted a continuing violation.[176]

---

[171] *Id.* at 329–30.

[172] 142 F.3d 233 (5th Cir. 1998).

[173] *Berry*, 715 F.2d at 981.

[174] *Huckabay,* 142 F.3d at 239.

[175] *Id.*

[176] *Id.*

Applying the first factor here, McIntyre alleges harassment of "the same type[s]"[177]—sexual and racial harassment—that continued onward into the filing period. As to the second factor, McIntyre alleges that he was subject to acts of sexual and racial harassment that occurred on an essentially ongoing basis between 2010 and 2014. In contrast with *Stewart*, his allegations do not point to any intervening corrective action taken by HANO. Consequently, the first two factors considered in *Huckabay*, whether the alleged acts involving the same type of discrimination and the frequency of the discrimination, indicate a continuing violation.

As for the third factor—whether the conduct at issue had "the degree of permanence which should trigger an employee's awareness of and duty to assert his rights"[178]—the Fifth Circuit has observed that, by their nature, single acts of harassment do not have the same degree of permanence of discrete employment actions.[179] In *Waltman v. International Paper Co.*,[180] the Fifth Circuit reasoned:

> Acts of harassment that create an offensive or hostile environment generally do not have the same degree of permanence as, for example, the loss of promotion. If the person harassing a plaintiff leaves his job, the harassment ends; the harassment is dependent on a continuing intent to harass. In contrast, when a person who denies a plaintiff a promotion leaves, the plaintiff is still without a promotion even though there is no longer any intent to discriminate. In this latter example, there is an element of permanence to the discriminatory action, which should, in most cases, alert a plaintiff that her rights have been violated.[181]

Here, viewing the allegations in the light most favorable to McIntyre, the individual acts of harassment alleged in McIntyre's complaint may not have had "the same degree of permanence" as

---

[177] *Id.*

[178] *Id.*

[179] *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 476 (5th Cir. 1989).

[180] 875 F.2d 468 (5th Cir. 1989).

[181] *Id.* at 476.

the loss of a promotion or some other discrete act. Therefore, the Court finds that the continuing violation doctrine applies to McIntyre's claims for harassment. Accordingly, the Court will deny HANO's motion to dismiss McIntyre's harassment claims based on allegations that occurred before July 16, 2013.

### 3.     Prescription of State Law Claims

HANO also argues that McIntyre's state employment law, tort law, and whistleblower law claims are time-barred to the extent that they are based on allegations that took place before July 16, 2013.[182] In opposition, McIntyre contends that the state law claims are subject to continuous tort doctrine."[183] In support, McIntyre cites to *Young v. United States.*[184] In that case, the Fifth Circuit, quoting the Louisiana Supreme Court's explanation of prescription in the case of a continuing tort, noted, "[w]hen the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage."[185]

It is not clear what state law claims McIntyre intends to bring at trial other than his claim under the Louisiana whistleblower statute. In his memorandum in opposition, McIntyre lists only state claims of whistleblowing and intentional infliction of emotional distress.[186] McIntyre was specifically ordered by the Court to identify the facts he relies upon in his arguments, but has failed

---

[182] Rec. Doc. 134-1 at p. 5.

[183] Rec. Doc. 136 at p. 10.

[184] 727 F.3d 444 (5th Cir. 2013).

[185] *Id.* at 447–48 (quoting *Hogg v. Chevron USA, Inc.,* Nos. 2009–CC–2632, 2009–CC–2635, (La. 7/6/10), 45 So.3d 991).

[186] Rec. Doc. 136 at p. 3. On August 19, 2015, The Court granted HANO's motion for summary judgment as to McIntyre's claim for intentional infliction of emotional distress. Rec. Doc. 131.

to do so with respect to this argument.[187] Therefore, as McIntyre has failed to demonstrate how the actions allegedly taken by HANO qualify within the continuous tort doctrine, the Court finds that any state law claims, to the extent they contain allegations occurring before July 16, 2013, must be dismissed as time-barred.

### 4.    Prescription of Title VII Claims not Encompassed within EEOC Charge

HANO additionally argues that McIntyre's Title VII claims, to the extent that they exceed the scope of the charge lodged with the EEOC, must be dismissed for failure to exhaust administrative remedies.[188] In support, HANO cites *Spears v. Jefferson Parish School Board,*[189] stating that "[t]he law is clear that failure to file a charge with the EEOC within the 300-day limitations period and before filing suit requires dismissal of the claims."[190] HANO contends that, although the complaint alleges that the discrete events giving rise to the claims occurred beginning in August of 2010, the charge that McIntyre lodged with the EEOC is expressly limited to actions allegedly occurring between October 2013 and January 16, 2014.[191] Accordingly, HANO asserts that these claims are time-barred because they fall outside the 300-day limitations period.[192] In response, McIntyre asserts that his "Title VII claims result from the termination on January 14, 2014, with the incidents cited in his petition comprising continuous activity and illegal acts and commissions

---

[187] Rec. Doc. 131.

[188] Rec. Doc. 134-1 at p. 6.

[189] 2014 U.S. Dist. LEXIS 82326 (E.D. La. June 17, 2014) (Wilkinson, Mag. J.)

[190] Rec. Doc. 134-1 at p. 6.

[191] *Id.* at pp. 5–6.

[192] *Id.* at p. 6.

leading up to the termination. . ."[193]

As noted above, in deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6), a district court may not "go outside the complaint."[194] There is one recognized exception to that rule: a district court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the claim.[195] Here, the EEOC charge is referenced in McIntyre's first amended complaint and is central to his claim.[196] HANO attached the EEOC charge to its motion to dismiss.[197] Accordingly, the Court will consider the EEOC charge in deciding the motion to dismiss.

The filing of an EEOC charge within 300 days of the last discriminatory or retaliatory act is a prerequisite to filing a lawsuit under Title VII.[198] "The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers."[199] The Fifth Circuit, in *Pacheco v. Mineta*,[200] reasoned that "[o]n the one hand, because the 'provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally" but "[o]n the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in an attempt to

---

[193] Rec. Doc. 136 at p. 10.

[194] *Rodriguez*, 310 F. Appx. at 626; *Carter*, 541 F. App'x. at 416–17.

[195] *Id.*; *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[196] Rec. Doc. 17 at p. 3.

[197] Rec. Doc. 10-3. This attachment was part of HANO's first motion to dismiss, which the Court denied in-part without prejudice and allowed HANO to refile.

[198] *Nat'l R.R. Passenger Corp.*, 536 U.S. at 109.

[199] *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).

[200] 448 F.3d 783 (5th Cir. 2006).

achieve non-judicial resolution of employment discrimination claims."[201] The Fifth Circuit therefore instructs that the scope of an EEOC complaint should be "construed liberally" and the Court should "look slightly beyond its four corners."[202]

McIntyre's EEOC charge states: "I began employment with Respondent as a Budget & Finance Manager on July 2010. On or about October 2013, I complained about a sexually hostile work environment to David Gilmore (White), Administrative Receiver) [sic]. On January 16, 2014, Respondent discharged me."[203] HANO has failed to show that McIntyre's EEOC charge was limited to what occurred between October 2013 and January 16, 2014. The fact that McIntyre alleges he complained in October of 2013 of a "sexually hostile work environment" presupposes that a hostile work environment arose on that date or at some point prior to that date. As noted above, the EEOC charge also states that McIntyre had begun working at HANO in July of 2010.[204] Therefore, construing the EEOC charge liberally, the Court finds that the EEOC charge encompassed conduct that occurred before October 2013. Accordingly, the Court will deny HANO's motion to dismiss McIntyre's Title VII claims based on allegations that occurred before October 2013.

**B.     *Whether McIntyre's Undated Allegations Claims Are Prescribed***

HANO seeks summary judgment on McIntyre's Section 1983 claims that are based on undated allegations.[205] HANO specifically seeks summary judgment on Section 1983 claims arising

---

[201] *Id.* at 788–89.

[202] *Id.*

[203] Rec. Doc. 10-3.

[204] *Id.*

[205] Rec. Doc. 134-1 at p. 4.

out of incidents listed in paragraphs 33-35, 39-40, and 55-56 of McIntyre's complaint.[206] HANO contends that, when read in connection with the surrounding paragraphs, claims based on the undated paragraphs must also be dismissed as time-barred because they too took place before July 16, 2013.[207] In opposition, McIntyre asserts that "the incidents cited in his petition compris[e] continuous activity and illegal acts and commissions leading up to the termination. . ."[208]

### 1.    Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[209] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[210] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[211] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law."[212] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and

---

[206] *Id.*

[207] *Id.* at p. 5.

[208] Rec. Doc. 136 at p. 11.

[209] Fed. R. Civ. P. 56(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[210] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[211] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[212] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

articulate the precise manner in which that evidence establishes a genuine issue for trial.[213]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[214] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[215] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[216] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[217] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[218]

### 2.    Prescription of Undated Allegations

HANO specifically seeks summary judgment on Section 1983 claims arising out of incidents listed in paragraphs 33-35, 39-40, and 55-56 of McIntyre's complaint.[219] The allegations in paragraphs 33-35 pertain to actions by HANO's Human Resource Director, Marilyn Allen ("Allen").

---

[213] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[214] *Celotex*, 477 U.S. at 323.

[215] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).

[216] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248-49 (1996)).

[217] *Little*, 37 F.3d at 1075.

[218] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); FED. R .CIV. P. 56(c)(2).

[219] Rec. Doc. 134-1 at p. 4.

McIntyre alleges that, in September of 2011, Allen called McIntyre into her office and offered to make an investigation of McIntyre go away if he would "commit to an outing after work."[220] The allegations in the paragraphs that follow discuss the commencement of an investigation against McIntyre and how that investigation was conducted, as well as comments made by Allen to the staff about McIntyre. McIntyre has made no assertion that these events occurred at any time other than in September of 2011, and as such has failed to point to a genuine issue of material fact demonstrating that these allegations are not time-barred.

The allegations in paragraphs 39-40 pertain to the termination of McIntyre's assistant, which McIntyre alleges occurred in March of 2012.[221] As the events contained in those paragraphs consist of allegations that occurred prior to the assistant's termination, McIntyre has failed to point to a genuine issue of material fact to show that those allegations are not time-barred.

In paragraphs 55 and 56 of McIntyre's complaint, McIntyre alleges that Gilmore and the legal team attempted to convince McIntyre to make a false statement in court, told him to "use that same afro, black charm in the court room that you use on the women you date," and stated "you never told me whether or not you like men."[222] Paragraph 54 states that "[o]n or about June 5, 2013 Mr. Gilmore told Mr. McIntyre that he would have him testify in several legal cases involving HANO" and that it was "good to have a black face out in front."[223] Again, McIntyre has failed to point to a genuine issue of material fact that these allegations are not time-barred.

In accordance with the Court's earlier findings, the Court finds that these allegations are

---

[220] Rec. Doc. 1 at p. 4.

[221] *Id.* at p. 5.

[222] *Id.* at p. 6.

[223] *Id.*

time-barred to the extent that McIntyre raises them as the basis for his Section 1983 claims of sex discrimination and race discrimination. These facts may still be used, however, as part of a claim for harassment.

## C.   *Whether HANO is entitled to Summary Judgment on McIntyre's Whistleblower Claims*

HANO contends that it is entitled to summary judgment on McIntyre's claims under both state and federal whistleblower law because McIntyre has not alleged a violation of state bid law or the federal False Claims Act.[224] In response, McIntyre contends that he "made complaints about Gilmore's illegal activities in violation of Louisiana State Bid Law (La. R. S. 39:1594; La. R. S. 32:2212) and the Federal False Claims Act (31 U.S.C. 3729, which allows a private action for false claims to the government)."[225]

### 1.   Legal Standard on a Motion for Summary Judgment

As noted above, summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[226] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[227]

### 2.   Louisiana Whistleblower Claims

HANO moves for summary judgment on McIntyre's claim under Louisiana's whistleblower statute, arguing that McIntyre has failed to demonstrate that HANO violated state law and that he

---

[224] Rec. Doc. 134-1 at pp. 7–13.

[225] Rec. Doc. 136 at p. 10.

[226] FED. R. CIV. P. 56(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[227] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson*, 477 U.S. at 248-49).

was terminated as a result of his reporting of the misconduct.[228] In opposition, McIntyre states that Gilmore "was not following bid law and was also paying illegal contractors for work not done, work done on personal projects, inflated billing, fraudulent billing, and more" and that McIntyre "brought these illegal acts to Gilmore's attention, objected to them, refused to participate in them, and suffered retaliation as a result."[229] McIntyre contends that he "made complaints about Gilmore's illegal activities in violation of Louisiana State Bid Law (La. R. S. 39:1594; La. R. S. 38:2212). . ."[230]

Louisiana's whistleblower law, codified as LA. REV. STAT. ANN. 23:967, provides that "[a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law: (1) [d]iscloses or threatens to disclose a workplace act or practices that is in violation of state law[;] (2) [p]rovides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law[;] [or] (3) [o]bjects to or refuses to participate in an employment act or practice that is in violation of law." In order "[t]o qualify for protection under the Louisiana Whistleblower Statute, a plaintiff must prove that his employer committed an *actual* violation of state law."[231]

According to McIntyre, he is raising a state whistleblower claim based on a violation of Louisiana State Bid Law (La. R. S. 39:1594; La. R. S. 38:2212).[232] From his declaration, it appears that McIntyre alleges that HANO did not publically solicit bids from vendors in accordance with

---

[228] Rec. Doc. 134-1 at p. 12.

[229] Rec. Doc. 136 at p. 1.

[230] *Id.* at p. 2.

[231] *Wilson v. Tregre*, 787 F.3d 322, 326 (5th Cir. 2015) (emphasis in original).

[232] Rec. Doc. 136 at p. 3.

state bid law, but instead awarded them to preferred vendors who were friendly with Gilmore.[233]

However, during his deposition, McIntyre admitted that all of the contracts he alleges should have

been subjected to Louisiana state bid law were contracts for professional services.[234] Both the Fifth

Circuit and the Louisiana Supreme Court have noted that the Louisiana bid law does not apply to

contracts for services.[235] "The [New Orleans] City Charter contains a similar requirement, but

exempts only contracts for professional services."[236]

Throughout the course of this litigation, McIntyre has submitted numerous exhibits, but has

often failed to identify them properly. The exhibits attached to McIntyre's memorandum in

opposition are also inadequately identified. The district court has "no duty to scour the record in

search of a fact issue on behalf of a party opposing summary judgment."[237] McIntyre does not

identify any evidence in his opposition to show that these contracts were not for professional

services. Accordingly, the Court finds that McIntyre has not pointed to a genuine issue of material

fact to support his claim that HANO committed a violation of state bid law. As noted above, to state

a whistleblower claim, a plaintiff must prove that his employer committed an actual violation of

---

[233] Rec. Doc. 136-2 at p. 2 ("These vendors, which mostly had close friendships or business ties to the Administrative Receiver, were given contracts/agreements in violation of HANO's procurement policies, HANO's and HUD's Regulations and Federal and Louisiana State Bid Law.").

[234] Rec. Doc. 134-4 at p. 6–7.

[235] *Worldwide Parking, Inc. v. New Orleans City*, 123 F. App'x 606, 608 (2005) (citing *Wallace Stevens, Inc. v. Lafourche Parish Hosp. Dist. No. 3*, 323 So.2d 794, 796 (La.1975)).

[236] *Id.* (citing New Orleans Home Rule Charter § 6–308(5) (1996); *New Orleans Rosenbush Claims Serv., Inc. v. City of New Orleans*, 653 So.2d 538, 546 (La.1995)).
*See also* City of New Orleans Home Charter Rule § 6-308(5) (2014), *available at* https://www.municode.com/library/la/new_orleans/codes/code_of_ordinances?nodeId=PAI_HORUCH ("Except in the purchase of unique or non-competitive articles, competitive bids shall be secured before any purchase, by contract or otherwise, is made or before any contract is awarded for construction, alteration, repair or maintenance or for the rendering of any services to the City, other than professional services... .").

[237] *Saddler v. Quitman Cnty. Sch. Dist.*, 278 F. App'x 412, 418 n.19 (5th Cir. 2008); *see* FED. R. CIV. P. 56(C)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

state law. Therefore, the Court finds that HANO is entitled to summary judgment on McIntyre's Louisiana whistleblower claim.

### 3.      Federal Whistleblower Claims

Finally, HANO moves for summary judgment on McIntyre's whistleblower claims under federal law.[238] HANO argues that McIntyre has failed to raise a federal whistleblower claim, despite several separate amendments to the complaint prepared by his attorney, and therefore the Court should dismiss any such claim.[239] At oral argument before the Court on August 19, 2015, McIntyre asserted that he had pled whistleblower claims under federal law. In his opposition to the pending motion, McIntyre contends that, although he did not cite statutes in his original pleading, the facts in his complaint constitute adequate pleading under federal notice pleading for claims under the Federal False Claims Act as codified at 31 U.S.C. 3729.[240] McIntyre makes no argument, however, regarding the facts he asserts support such a claim or even which section of the False Claims Act he alleges HANO has violated. Accordingly, the Court finds that McIntyre has not pointed to a genuine issue of material fact to support his claim that HANO committed a violation of the False Claims Act, and therefore HANO is entitled to summary judgment on this claim.

---

[238] Rec. Doc. 134-1 at p. 2.

[239] *Id.* at p. 13.

[240] Rec. Doc. 136 at p. 2.

## IV. Conclusion

Accordingly;

**IT IS ORDERED** that "Defendant's Motion to Dismiss Time-Barred Claims and Motion for Summary Judgment Regarding Whistleblower Claims"[241] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** to the extent that it moves for summary judgment on McIntyre's Section 1983 claims of sex discrimination, race discrimination, and retaliation based on allegations that occurred prior to July 16, 2013; McIntyre's Section 1983 claims based on undated allegations; McIntyre's state law claims based on events that occurred prior to July 16, 2013; McIntyre's claim under Louisiana whistleblower law; and McIntyre's claim under the federal False Claims Act.

**IT IS FURTHER ORDERED** that the motion is **DENIED** as to the remaining claims.

**IT IS FURTHER ORDERED** that the parties shall file a revised joint Pretrial Order on or before September 9, 2015 at 5:00 p.m.

**NEW ORLEANS, LOUISIANA**, this  4th  day of September, 2015.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[241] Rec. Doc. 134.